

E-FILED
Thursday, 11 July, 2019 01:25:51 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

WALTER J. NUNLEY,
     Petitioner,

v.                           Case No.:_____

F.C.I. PEKIN's Nurse Daniels, Dr. Scott
Moats, and Dr. Jeffery Lee Ho.
     Respondent's.

## MOTION UNDER ALL WRITS ACT
## 28 U.S.C.S. § 1651

Comes now the Petitioner, Walter J. Nunley, in pro se and within the language and understandings stated in Hanes v. Kerner to file a motion in this Honorable Court starting with the All Writs Act due to this Petitioner's lack of knowledge which Motion to actually file but knows the grounds he is seeking and using.

This Motion stems from an incident that took place at the Federal Bureau of Prisons at F.C.I. Pekin, Pekin, Illinois in violation of 42 U.S.C. § 1983 and the 8th Amendment to the United States Constitution to be free from cruel and unusual punishment.

## COMPLAINT

This case is almost a mirror to 2018 U.S. Dist. LEXIS 212871 Riles v. Ractley, (7th Cir. 2018) also known as Santana Riles, #M-54574, Plaintiff vs. Terra Ractley, Defendant Case No. 18-CV-01913-JPG, Dec. 18, 2018 for the following:

In August of 2018 (dates will be approximate due to retaliations received from institution after filing for administrative remedies.)

-1-

Petitioner noticed a bite on his right calf that was oozing and burning. Petitioner attempted to wash the bite off not knowing its origin.

The second day after noticing the bite, Petitioner noticed more oozing and the bite expanding with a burning sensation. The Petitioner was unable to report to the Medical Department due to it being a weekend and no sick call was open, medical personel get angered at F.C.I. Pekin when there is no Sick Call and inmates are in need of care so Petitioner was going to wait until the following day when sick call was available.

While sitting in the Day Room on a chair, Officer Vicory who was the Illinois 2 Unit Officer walked by Petitioner and noticed his leg now open, exposed and leaking blood and fluids down into his (Petitioner's) sock. It was at 9:15pm and about to be lock down for the institution.

Officer Vicory called Petitioner to his office and inquired as to what had happened to Petitioner's leg? Petitioner stated the same things that are stated within this Motion. Officer Vicory demanded this Petitioner go to the Medical Department (immediately)!

Petitioner was called to the medical department over the prison radio system (officers) and upon arrival to the medical department, Petitioner was met by Nurse Daniels who began screaming and using profanities at the Petitioner "I've been here since 6:30 this morning all F**king day and now you (Petitioner) decide to come to medical!" Petitioner responded that Officer Vicory had sent him (Petitioner) that he (Petitioner) was obeying a direct order. This frustrated Nurse Daniels even more. She demanded

-2-

sit down in a chair and shut up. Nurse Daniels next statement was "Did you use the weight equipment?" Petitioner is a very large man 5'8 and 320 pounds of obesity. Of course Petitioner did "NOT" use any weight lifting equipment.

Petitioner responded that he had not and never had [EVER], to which Nurse Daniels response was "Of course not!" Nurse Daniels then diagnosed the wound as MRSA and put a guaze pad and coban around Petitioner's right calf (pink with smiley faces - printed on coban) which was embarassing to Petitioner, then instructed Petitioner "NOT" to return to medical unless it was an emergency on the weekends, and then assessed the Petitioner a $2.00 co-pay for a direct order by a fellow staff member to report to medical Officer Vicory!

Petitioner returned to the medical department the following day Monday because wound had opened further and was bleeding and leaking a clear substance from under the guaze and coban down into the Petitioner's sock and when Petitioner put on Federal Prison Uniform (Brown Kahki Pants) the pain was intense so Petitioner kept on his Commissary Purchased Shorts.

At Medical Department, awaiting triage, Ms. Q from the Dental Department next door to the Triage Room, came out and saw the Petitioner in shorts and began screaming at him (Petitioner) with questions of "Who do you think you are special? Go back to your dorm and get on your uniform or I am going to write you (Petitioner) an infraction and Disciplinary Report."

Petitioner stood up and turned his right calf towards the Dental Assitant Ms. Q and showed her the blood and clear substance pouring from his leg, and then pulled off the coban and guaze

-3-

and showed her (Ms. Q) the actual wound. Ms. Q grimiced and told Petitioner to sit down on the bench!

Petitioner was called for triage by Mrs. Chasity Bumgard A.K.A. (Mrs. B) who at that time was a nurse at F.C.I. Pekin (now at U.S.P. Thompson).

When Mrs. B. SAW the wound she gasped and stated "Nunley, (Petitioner) it looks like you have been bitten by a Brown Recluse, did you check your cell for any?" Petitioner responded that he had and even asked Officer Rockhold to contact C.M.S. to spray but that Officer Rockhold told Petitioner to quit being a baby that he (Officer Rockhold) would not call any C.M.S. to spray for anything.

Mrs. B shook her head and asked Petitioner to wait to see Dr. Lee Ho (Dr. Jeffery Lee Ho).

Dr. Lee Ho came into triage and saw the wound on the back of Petitioner's right calf, began pressing on it and causing great pain to the Petitioner. He (Dr. Lee Ho) then instructed Mrs. B to issue an antibiotic to the Petitioner. The Dr. gave the name as Detramyacin [sic] that rhymed with a medication that was listed in the Petitioner's medical file as one that Petitioner is allergic to Erythomyacin [sic] which Petitioner alerted Dr. Lee Ho of such. Dr. Lee Ho said it was different then that medication but yes of the same family and issued it to the Petitioner any way.

At no time was any toxicoligy or culture done of the Petitioner's right calf and wound nor was any anti-venom medication ordered only an antibiotic that the Petitioner stated he was alergic to a darivitive of. At least what he believed to be related to.

-4-

Petitioner was then bandaged again with gauze and coban luckily this time a purple coban with another design on it by Nurse Mrs. B. Dr. Lee Ho also ordered daily dressing changes.

The following day, Mrs. B, did a dressing change and this day was worse then the day prior. The leakage was greater, and the wound had grown. Mrs. B got out a measuring tape and measured the circumfrance or size of the wound. She (Mrs. B) then rebandaged and recovered the wound and the Petitioner received the antibiotic that evening at pill call a full day later.

The 3rd day the Petitioner went to dressing change and Mrs. B measured the wound again which had grown even further. She once again called Dr. Lee Ho in to observe the wound and the documented size that Mrs. B had written and Dr. Lee Ho stated, Petitioner just started with antibiotics give them a chance to kick in and then upped the dosage.

For record, Petitioner would like to add his allergies here, Penicillian [sic] (Includes all Cillians) and is anifalactic [sic] will die from. Sulfa [sic], breaks out in hives and swollen throat. Erythomyacin [sic] upset stomach, diaharea [sic], shortness of breath and which will be discovered further in this complaint, detramyacin [sic] and its derrivitives.

Petitioner continued to come to the medical department for dressing changes daily. During the week Petitioner was seen by Mrs. B, on the Weekends and on the Prisons Call Out Sheet meaning Petitioner was scheduled to be there, Petitioner was seen by Nurse Daniels.

On the first weekend, the Petitioner's wound had still not improved and Nurse Daniels became angered with Petitioner when

-5-

he arrived at his (Petitioner's) scheduled appointment in the morning stating that "Don't come to medical this early, wait until after count or you won't be seen at all!" Again Petitioner stated that he was scheduled for this time again by fellow staff to which Nurse Daniels responded "They don't know how to schedule appointments, I will do them on my time!"

On the following weekend day, while awaiting in the outside entrance into the medical department where the sick call window is located, Petitioner overheard a conversation via a telephone conference where Nurse Daniels was very heated explaining to somebody of close relation to her, that she was sick of the way she was being treated by the medical department at Pekin that she intended to contact H.R. and reschedule her (Nurse Daniels) time slot that she (Nurse Daniels) worked more hours than any other nurse without as much appreciation as they (Other Nurses) get. That she also was going to demand a raise.

Petitioner told this information to Mrs. B the following day as well as to the Assistant Health Service Administrator Ms. Ingraham. (Monday).

When Nurse Daniels finally got through speaking to her associate or person related her on the phone and making her complaints, Petitioner had stood outside in the waiting area (No chairs) exposed to elements for over an hour with pain and fluids rushing from Petitioner's right calf and wound.

Petitioner continued wound dressing changes as scheduled and was again seen by Dr. Lee Ho who consulted with Dr. Scott Moats. It was Dr. Lee Ho's and Dr. Scott Moats opinion to continue with the antibiotic treatment and wait for it to take effect.

-6-

No improvement came, and Petitioner began experiancing dizzy spells and sickness in his stomach. Petitioner reported these conditions to Dr. Lee Ho who suggested taking the medicine with food to help.

Another week passed with no improvement and only worse conditions as well as the size of the wound increasing which was also noticed by other nurse staff that saw Petitioner, Ms. Schmidt [sic].

That following Saturday, again Petitioner was seen by Nurse Daniels who on cue was frustrated about work conditions and all of the over time she was working and it reflected on this Petitioner.

On that Sunday, Nurse Daniels took off the coban and gauze and gasped, "Oh My God this thing looks horrible, I need to get you to the hospital immediately!" This had been a desire of the Petitioner since the first reporting.

Nurse Daniels stated that Dr. Lee Ho was at church and then consuled with Health Service Administrator Mr. Johnson who was also Duty Officer of the institution this day and Johnson stated, "if you can't reach Lee Ho, I will authorize the transport myself!"

Dr. Lee Ho was reached and he authorized the transport to the hospital.

The Petitioner was dressed out in transport clothes and forced to put on pants that caused great pain to the Petitioner. It then took over two hours for Lt. Hamm to put together a transport team because Officer Newman, refused to transport because of "too much" overtime.

Once two transport officers were assigned, Lt. Hamm had Petitioner handcuffed and shackled (both legs) and instructed

-7-

Petitioner if "he attempted anything, he (Petitioner) would be shot to death, to sign stating the same a release form." Petitioner signed.

Petitioner was taken to Unity Health Hospital in Pekin and seen in the emergency room where after the doctor there saw the wound and diagnosed it, immediately admitted the Petitioner.

Unity Health Hospital confirmed that indeed the wound was a spider bite (Brown Recluse) by the way the wound was presenting itself, surgery was ordered and IV Doses of Antibiotic was also ordered.

Following Dr. Lee Ho's orders, the same detramyacin [sic] was ordered by IV as well as a stronger of its derrivitive some other myacin. This Petitioner does not recall it's name.

Petitioner had surgery performed, a hole the size of a golf ball was left in Petitioner's leg and the inability to walk more than 3 steps due to the wound which Petitioner's hospital doctor ordered physical therapy due to this impairment. Petitioner even remained in the Unity Health Hospital for 12 days.

Petitioner 7 days into the IV medication that was continued per Dr. Lee Ho's initial order, began losing his breath, and a large rash had taken over Petitioner's body to his genitals, under his arms, and his rectum. One of the Unity Health Hospital Nurses who was a charge nurse over Petitioner was called on the call light button came in to Petitioner's Room and immediately stopped all antibiotic medicines issued. Her replacement sadly restarted them and threatened Petitioner with being discharged A.M.A. if Petitioner refused to take them again.

-8-

Petitioner still needed therapy and treatment for the open wound from surgery so Petitioner did not resist the R.N. who demanded Petitioner take the IV medications again. This will be a seperate case against the Unity Health Hospital and that Nurse unless this Court can include them in this filing if it is allowed and permissable.

Petitioner finished out his therapy and was discharged from the Unity Health Hospital with instruction by his original E.R. Doctor to be on a lower floor once returned to prison as well as be allowed to use a wheelchair until such time as the wound and surgery had healed more and Petitioner could regain the use of his right leg.

A transport team was called from the F.C.I. Pekin that had included Officer G.K. and another officer not remembered by this Petitioner as well as a "Handicapped, Wheelchair Accessible, Van."

When the transport officers arrived, Petitioner was placed into a wheelchair that was literally falling apart with no brakes, no handles for Petitioner to rest his arms, and the seat was torn and ripped. Petitioner was taken down stairs to the awaiting van and both officers were untrained in the use of the Wheelchair Lift. Petitioner was finally on the lift but unsecure and hoisted into the back of the van. Officer's were not trained in the use of the restraints of the handicapped van so Officer G.K. stayed in the back of the van, and physically held onto the wheelchair to stop it's movement during the transport back to the F.C.I. Prison in Pekin. Each turn and stop this Petitioner was thrown about and almost on several occassions tossed from the wheelchair.

Petitioner returned to F.C.I. Pekin on a weekend and was

-9-

wheeled into the prison and wheeled into the Medical Department to check in per policy of all outside medical trips require.

Nurse Daniels was again working, she demanded knowledge as to why I was in a wheelchair, and told me to go back to my dorm Illinois 2. Petitioner explained that there was a hole in the Petitioner's leg from the spider bite and surgery that he was unable to walk more than 3 steps on the leg which Nurse Daniels response was, there is no order for a wheel chair but I don't give a "Sh*t take it and go back to your dorm.

Petitioner had to one leg wheel himself back to his dorm and upon arrival it was count time Petitioner was placed into an 8 man cell temporary for count.

Petitioner's cell assignement was Illinois 2 Cell 205 which is on the Second Floor. The officer of the unit called to medical and asked Nurse Daniels for an authorization for a cell reassignement since it was the weekend and Nurse Daniels refused and only offered anger for being called because Nurse Daniels stated that no report had come from the Unity Health Hospital stating Petitioner be placed on the lower floor or in a wheelchair.

Petitioner was then carried by two fellow inmates up multiple flights of stairs to his cell where he (Petitioner) remained until it was time to eat dinner.

Petitioner was wheeled in the wheelchair to the dinning hall again by fellow inamtes and Nurse Daniels was working security in the dinning hall. She became agitated and told the fellow inmates there was nothing wrong with the Petitioner and also the current Lt. that Petitioner did not require the use of the wheelchair but that Petitioner could use it only over night that

-10-

Petitioner must return the wheelchair to the medical department no later than the following day.

Disgusted, beaten, and broken spirited, Petitioner the following day in fact returned to medical with the wheel chair and forced himself to suffer the pain of the injury.

Wound care and dressing changes continued on the Petitioner for over 2 months.

Petitioner still to date suffers pain and suffering from this incident and wound as such Petitioner request and seeks Preliminary Review pursuant to 28 U.S.C. § 1915(A) and also in accordance with Myrick v. Anglin, 496 F.App'x 670, 674 (7th Cir. 2012) and Gutierrez v. Peters, 111 F.3d 1364, 1373 (7th Cir. 1997)

"Brown Recluse spider bite and MRSA infection are sufficiently serious to support 8th Amendment Claim." Myrick.

"Purulent draining infection accompanied by pain and fever sufficiently serious under 8th Amendment claim." Gutierrez.

"Conditions that are potentially life-threatening or pose a risk of needless pain or lingering disability support 8th Amendment claim." Davis v. Jones, 936 F.2d 971, 972 (7th Cir. 1991).

With the way that Nurse Daniels, Dr. Jeffery Lee Ho, and Dr. Scott Moats responses and treatment towards Petitioner was a deliberate indifference when they acted in disreguard to a known or obvious risk of harm to the prisoner (Petitioner). Berry v. Peterman, 604 F.3d 435, 441 (7th Cir. 2010).

Factual allegations of pro se complaints are to be liberally construed. Rodriquez v. Plymouth Ambulance Serv., 577 F.3d 816, 821 (7th Cir. 2009). Thus this Petitioner respectfully request of this Honorable Court to be heard.

Finally this Petitioner should also mention that Administrative Remedies were saught both verbally and via the Administrative Remedies process via the Federal Bureau of Prisons without any

acknowledgement or answer to this Petitioner's filing it at the F.C.I. Pekin leaving this Petitioner to believe that it was destroyed and ignored but due to the seriousness of this claim, has come directly to this Honorable Court.

Petitioner is unaware of all what he is allowed to ask in this motion and can only reflect off of what was on LEXIS under 212871 Riles v. Ractley and pray of this Honorable Court to GRANT counsel if allowed to Petitioner to help perserve this Petitioner's rights in this matter, respectfully requested this the 7th day of July, 2019, and any other relief this Honorable Court allows.

_Walter Nunley_
Walter J. Nunley, Petitioner:

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing Motion Under All Writs Act has this the 8th day of July, 2019 been placed within the Legal Mail Services of the Federal Bureau of Prisons for mailing to the United States District Court for the Central District of Illinois, to the Office of the Clerk Room 309 at the Federal Building, 100 N.E. Monroe, Peoria, Illinois 61602 for filing at this Court's soonest available time.

_Walter Nunley_
Walter J. Nunley #17561-040
Metropolitan Cor. Center
71 W. Van Buren Street
Chicago, Illinois 60605

-12-

Walter Nunley #15561-040
Metropolitan Correctional Center
71 W. van Buren St.
Chicago, IL. 60605

United States District Court
Central District of Illinois
Office of the Clerk Room 309
Federal Building
100 N.E. Monroe
Peoria, Illinois 61602

\* Legal Mail \*